ALEXANDER HILL *v.* THE NEW ORLEANS, OPELOUSAS AND GREAT WESTERN RAILROAD COMPANY.

Action for damages for injury done plaintiff by being thrown from the cars. A bill of exceptions was taken to the admission in evidence of the declarations of the Superintendent as to the conduct of the engineer.

*By the Court:* It is clear that the Board of Directors alone had the power to make admissions in regard to the controversy which would bind the company, and that no ordinary agent of the company would possess the power unless expressly granted.

In order to enable the plaintiff to recover it must appear that there was no want of care, and no imprudence on the part of the plaintiff, by which the injury was in any manner directly brought about, and that the injury was occasioned by the negligence of the company, or its officers, either in not having provided the necessary apparatus and fixtures to the locomotive or train by which the accident might have been guarded against, or by the carelessness or malfeasance of its agents. If it appear that the injury would have equally happened with or without such guards to the locomotive or train, then the want of them will not increase the responsibility of the company.

In actions of this kind vindictive damages cannot be given, although the negligence is clearly proven. Vindictive damages are sometimes allowed in the case of wilful or malicious injuries.

In estimating damages the jury may consider the painful nature of the wound, as well as the length of time the plaintiff may have been kept from his employment, and the permanent character of the injury. The jury should allow such reasonable sum as will compensate the plaintiff, and no more. The company in such cases is not to be punished for the negligence or carelessness of its agents as a crime.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J. *Livingston*, for plaintiff. *Cohen*, for defendant and appellant.

MERRICK, C. J. This suit is brought to recover damages from the company for injuries occasioned the plaintiff by being thrown, as alleged, from the railroad cars.

It appears that the cars ran over a blind horse, and that the defendant, a passenger upon them, was either thrown or jumped from the cars, whereby he was seriously injured. None of the other passengers were harmed, all of them except one other having kept their seats.

The jury gave a verdict of nine thousand dollars in favor of the plaintiff, and the defendant appealed.

There are two bills of exception in this case which require our notice. The first is taken to the admisssion in evidence of the declarations of *Payne*, the Superintendent of the road, made in the presence of the witness *Dunbar* in a conversation with *Hill* after the injury. The substance of the statement of *Payne* was that the engineer had been guilty of the most gross carelessness, and that he had requested *Mr. Gibbs*, the Chief Engineer, to discharge him, and that he would discharge him as soon as he got control, and that he (the engineer

who ran the locomotive) told him (*Payne*) that he thought the horse would jump off as soon as the engine touched him.

The testimony of *Dunbar* as to the declarations of *Payne* was objected to on the ground that *Payne* could not bind the defendants by any remarks, because he could be summoned as a witness, and at the time of making his declarations he was not under oath, and the defendants had no opportunity of a cross-examination.

It is evident that this testimony was calculated to exert a great influence upon the minds of the jury, it being the opinion of one of the officers of the company upon the cause of the accident. Aside from the liability of the loose conversations of the numerous agents of a large company to be misunderstood, it becomes important to know how far the declarations of such officers are binding and affect the company in regard to *past* transactions.

The declaration or admission of an agent is evidence against the principal only on the supposition that the agent represents the principal. But the agent only represents his principal within the scope of the authority delegated. If the agent is authorized to make a contract for the company, his declarations and admissions in regard to that contract are the acts of the company, and are admissible in evidence as forming a part of the *res gestæ* But so soon as the transaction is ended the agency in the affair terminates, and the agent has no longer authority to speak of it so as to bind the company.

It is the duty of the engineer to run the locomotive, and keep it in running order. It is not in the scope of his authority to make admissions for the company, or settle controversies on its behalf. So of the Superintendent: it is his duty, we suppose, to superintend, through proper agents, the running of the cars, the receipt and delivery of freight, the transportation of passengers, the expenses and receipts of the road and the keeping of the books. Any contract within the scope of the authority delegated, made by him, would bind the company, but he has no authority to bind it by any admission in regard to business not delegated to him, and which he is without authority to settle.

As the declaration of the engineer to the Superintendent, and the declaration of what the engineer said to the Superintendent was retailed by him to the plaintiff in the presence of the witness after the affair had occurred, it is not important to decide whether the declarations of an agent at the time of the alleged commission of an act of malfeasance is or is not admissible in evidence against the principal.

It is clear that the Board of Directors alone had the power to make admissions in regard to the controversy which would bind the company, and that no ordinary agent of the company would possess the power, unless expressly delegated. 2 Stark. Ev., 43; Greenleaf, 113, 114; Story on Agency, 137.

The court, therefore, erred in permitting the declarations of *Payne*, in the conversation between him and the plaintiff, to go to the jury.

As the real question presented by the pleadings is whether the negligence of the defendant's agents occasioned the injury to the plaintiff, and as the term locomotive is sometimes used as a figurative expression for the train, and as the plaintiff himself had offered testimony tending to show in what manner the horse was run over by the locomotive and the cars, we think the defendat should have been permitted to interrogate the witness *Octave Villette*, and others, and to show the real manner in which the horse was brought in contact with the cars, and the injury occasioned.

HILL
*v.*
OPELOUSAS R. R.

It is apparent, in order to recover, it must appear: 1st. That there was no want of care or imprudence on the part of the plaintiff, by which the injury was in any manner directly brought upon himself; and, 2d. That the injury was occasioned by the negligence of the company or its officers, either in not having provided the necessary apparatus or fixtures to the locomotive or train, by which the accident might have been guarded against, or by the carelessness or malfeasance of its agents.

If it appear that the injury would have equally happened with or without such guards to the locomotive or train, then the want thereof will not increase the responsibility of the company.

This case must be remanded to the lower court for a new trial. We are the more willing to do so because we are not satisfied with the verdict. It appears to us to be much higher than the testimony as it stands will justify, even if the testimony of defendant's witnesses be disregarded. In actions of this kind it is not within the province of the jury, although the negligence is clearly proven, to give vindictive damages, as is sometimes allowed in cases of wilful or malicious injuries. It is true that in estimating the damages where a case is made out, the jury may consider the painful nature of the wound as well as the length of time the plaintiff has been kept from his employment, and the permanent character of the injury; but in assessing the damages the jury should give such reasonable sum as will really compensate the plaintiff, and no more. The company in such case is not to be punished for the negligence or carelessness of its agents as a crime.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that this cause be remanded to the lower court for a new trial, with instructions to the court, in receiving and rejecting testimony to be governed by the views herein expressed, and in other respects to proceed according to law; and it is further ordered, that the plaintiff pay the costs of the appeal.