The statute, like the article, provides as follows:

"The amount of the conventional interest cannot exceed eight per cent. The same must be fixed in writing; testimonial proof of it is not admitted in any case.

"Except in the cases herein provided, if any person shall pay on any contract a higher rate of interest than the above, as discount or otherwise, the same may be sued for and recovered within two years from the time of such payment."

The next paragraph provides that the rate of interest or discount on notes, bonds, etc., may exceed 8 per cent. per annum. The next paragraph provides that a note, bond, etc., may include a greater rate of interest or discount than 8 per cent. per annum, provided such obligation shall not bear more than 8 per cent. per annum after maturity until paid.

The proviso is applicable only to cases "where usury is a defense" under the provisions of the statute, and lays down a rule of evidence "to show said usury." This construction harmonizes all the provisions of the statute. It cannot be presumed that the lawmaker intended to enact contradictory legislation.

We therefore answer that the note sued on is not usurious.

---

(51 South. 205.)

No. 17,624.

CALDWELL v. NELSON MORRIS & CO.

(Jan. 17, 1910.)

*(Syllabus by the Court.)*

EVIDENCE (§ 241*)—DECLARATIONS OF AGENT—ADMISSIBILITY.

The declarations of a company's agent are not admissible against it, unless shown to have been made while acting within the scope of his authority, and in a matter relating directly to the agency and then depending. Declarations made by the agent are admissible against the principal only when forming a part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 887–892; Dec. Dig. § 241.*]

Appeal from Civil District Court, Parish of Orleans; Fred. D. King, Judge.

Action by H. G. Caldwell against Nelson Morris & Co. Judgment for defendants, and plaintiff appeals. Affirmed.

Lyle Saxon, for appellant. Merrick & Lewis, Ph. Gensler, and R. J. Schwarz, for appellees.

LAND, J. This is a suit for damages for slander and libel, brought by the plaintiff, a former employé of the defendant partnership.

The first part of the petition is devoted to charging the defendants with having systematically cheated and swindled their customers by false weights, and by delivering meats, lard, etc., unfit for human food. It is further alleged that the plaintiff, when ordered, "indignantly refused to lend himself a party to such nefarious transactions"; that this action on the part of the plaintiff created in the minds of the defendants a strong prejudice against him, and a determination to get rid of the petitioner, and to prevent him from obtaining employment elsewhere.

It is further alleged that the petitioner, being unable to put up with such methods of business, and fearing that he would be ruined in the estimation of his customers, and owing to the many grievances he had against the company, tendered his resignation August 1, 1903, which was duly accepted.

It is further alleged that the petitioner sought and obtained employment with the Standard Oil Company, and made application to various surety companies to go on his bond, but that each and every one of them declined to further go on his bond; that aft-

er great difficulty he obtained a surety bond on depositing a certified check for $500; that petitioner charges on information and belief that the defendant company, through their agents and servants, have and are secretly communicating to various guaranty companies slanderous reports, the exact language of which petitioner is unable to give, derogatory to petitioner and his good name, and that from said reports so made the said guaranty companies refused and still refuse to go on petitioner's bond; that through said reports a certain assurance company withdrew from petitioner's bond, which it had already signed; that such reports were false, malicious, and without probable cause, made with intent of damaging petitioner and preventing him from obtaining employment and earning his living; that from said reports he has suffered damages in trouble and anxiety in the sum of $5,000, and to his reputation in the additional sum of $5,000, for which petitioner prayed judgment.

The defendant excepted to the petition on the ground of vagueness and indefiniteness, and also filed an exception of no cause of action, and pleaded the general issue.

The case was tried before a jury, and a verdict and judgment were rendered in favor of the defendant. Plaintiff has appealed.

The defendant is a commercial partnership, with headquarters in Chicago, and a number of branches, one of them being in the city of New Orleans. Plaintiff was employed by the manager of the New Orleans branch. Plaintiff resigned his position on August 1, 1903, and at once entered into the employment of the Standard Oil Company. Plaintiff made application for bond to several surety companies, but was turned down, and finally was forced to put up a certified check for $500 in order to obtain the bond required by his new employer.

There is not a line of evidence in the record even tending to show that the defendants communicated reports of any kind, good or bad, to any surety company relating to the plaintiff, who admits that he personally knows nothing about the matter, but infers from defendants' actions that they made such reports. The manager at New Orleans testified that, as far as he knew, no such reports were made. Plaintiff complains of the exclusion of testimony tending to show admissions made by an agent or employé of the defendants that they were the cause of the bond companies refusing to go on the bond of the plaintiff. The agent is called by the plaintiff the "Southern representative" of the defendants, and by another witness the "Southern traveling representative, sent to represent Nelson Morris in these proceedings particularly." What were the powers of this agent does not appear, nor is the date of the alleged admission shown with even approximate certainty. It seems a fair inference, from the statement of the last witness, that the agent (so called) appeared after the litigation had commenced between the plaintiff and the defendants. It is not shown that said agent had any authority to represent the defendants in the litigation, or what were his powers.

It has been held that the declarations of a company's agent, while acting within the scope of his authority, are evidence as a part of res gestæ against it. But, the transaction ended, the agency terminates, and he can no longer speak of it, so as to bind the company. Hill v. Opelousas Co., 11 La. Ann. 292. The admission, to be binding, must be made during and must relate directly to the agency. Reynolds v. Rowley, 3 Rob. 201, 38 Am. Dec. 233; Dykes v. Cockrell, 6 La. Ann. 707; Keane v. Branden, 12 La. Ann. 20. The admission or declaration of his agent binds the principal "only when it is made during the continuance of the agency in regard to a transaction then depending et dum fervet opus." It is because it is a verbal act and

part of res gestæ. Greenleaf on Evidence (16th Ed.) vol. 1, § 184c.

The testimony was properly ruled out as hearsay.

The case being with the defendant on the merits, other exceptions and issues need not be considered.

This suit seems to have been instituted by the plaintiff on mere suspicion. While there is no sufficient proof that defendants slandered the plaintiff, there is no doubt that he libeled the defendants by spreading broadcast circular letters charging them with using nefarious methods in their business.

Affirmed.