BARNETTE, Judge.
The plaintiff-appellee Joseph P. Fasullo, doing business as Fasullo Drugs and Fasul-lo Self-Service Drugs, contracted with the defendant-appellant Columbia Casualty Company for a fidelity bond, labeled “Commercial Blanket Bond,” by the terms of which defendant obligated itself as follows:
“ * * * to indemnify the Insured against any loss of money or other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, to an amount not exceeding in the aggregate the amount stated in Item 3 of the Declarations [$10,000].”
Plaintiff made claim for the full amount of coverage for money and merchandise alleged to have been stolen, over a period of approximately five years, by his employee, Mrs. Eugenie Constant. The claim was denied for want of adequate proof, and plaintiff filed suit against the insurer and Mrs. Constant. From a judgment in plaintiff’s favor in the amount of $10,000 against both defendants in solido, the Columbia Casualty *362 Company brought this appeal. Appellee answered the appeal praying for attorney’s fees and the statutory penalty. Mrs. Constant did not appeal.
Mrs. Constant had been under suspicion by plaintiff for some time, but, according to his testimony, he was unable to obtain the proof necessary to support a charge of theft. He engaged the services of Hooper and Hawkins, a company which makes a specialty of checking retail outlets, and observing employees for the purpose of determining their integrity, and detecting theft. On March 6, 8, and 11, 1963, inspectors or “shoppers” in the employ of the investigating agency allegedly observed Mrs. Constant, a cashier in plaintiff’s drugstore, failing to ring up certain cash sales. The cash register tapes were checked for discrepancies; and on March 22, 1963, Mr. Robert Simpkins, a representative of Hooper and Hawkins, went to plaintiff’s store to confront Mrs. Constant with the accusation of theft.
When Simpkins arrived at the store, Mrs. Constant was called from her duties in the stock room and introduced to him. Mr. Fasullo then left the two alone in his office and returned to his duties in the prescription department. After some 35 minutes, Simpkins called him back to the office and informed him that Mrs. Constant had admitted stealing and had signed a “confession.” The alleged confession is as follows:
“3/22/63
“Page I of II Pages
“Fasullo’s Drug
Mr. Joseph Fasullo
Dear Sir
I, Eugenie J. Constant make this statement of my own free will, without threats or promises from anyone, and is true to the best of my knowledge. I have been told this statement can be used in evidence against me.
Since. I have been employed at Fasullo Drug I am guilty of stealing mdse. & money from cash sales. The largest amount of money I stolen [sic] from one cash sale is $5.00. The largest amount of money I have stolen in one day is at least ($12.00) Twelve Dollars.
Witnessed 3/22/63 n Eugenie Constant
Robert N. Simpkins 806 Ave A
Joseph P. Fasullo Westwego,
La.
“3/22/63
“Page II
of II Pages
I feel I have averaged stealing in money & mdes [sic] at least (7.00) seven dollars per day for a total am’t of at least ($10,500) Ten Thousand five hundred dollars.
I am sorry this has happen [sic].
Witnessed 3/22/63 Eugenie Constant
Robert N. Simpkins 806 Ave A
Joseph P. Fasullo Westwego, La.”
*363 After reading the “confession” Mr. Fasullo asked Mrs. Constant if it was true, and she answered affirmatively. He witnessed the statement after she acknowledged writing it in the presence of Mr. Simp-kins. Mrs. Constant then signed a note payable to Mr. Fasullo in the sum of $10,500.
On May 6, 1963, plaintiff filed his proof of loss supported only by the foregoing statement. The reports of Hooper and Hawkins and the cash register tapes were offered for inspection.
The case was called for trial on January 10, 1966, but Mrs. Constant failed to appear. Her attorney stated that he had made a diligent effort to contact her to advise her of the trial date but had been unable to do so. A motion for continuance was overruled, and trial was had in part and was held open for an appearance by Mrs. Constant at a later date. Trial resumed on March 1, at which time Mrs. Constant did appear and testify.
There is little dispute among the witnesses other than Mrs. Constant’s denial of theft. She admitted having written and signed the foregoing statement and note, but declared that she did so under threat and fear of prosecution. She testified that she wrote what Mr. Simpkins told her to write. Since she has not appeared, the judgment against her is final.
The judgment of the trial court rests entirely on the “confession” and the promissory note. The “shoppers” who reported Mrs. Constant’s defalcation were not called as witnesses, the explanation being that they had left the employ of Hooper and Hawkins and their whereabouts were unknown. One other “shopper” testified to explain the system of detection used but had no knowledge of the case in question. The only other witnesses were Mr. Fasullo, Mr. Simp-kins, and Mrs. Constant. Except for the “confession” of Mrs. Constant, there was no proof of the theft nor of the amount thereof. No testimony was offered and no exhibits were filed touching upon the amount of plaintiff’s loss through the “confessed” thefts. The loss estimate of $10,500 was arrived at by taking Mrs. Constant’s statement, “I feel I have averaged stealing in money & mdes [sic] at least (7.00) seven dollars per day * * The $7.00 was multiplied by the estimated total number of days worked, which, for purpose of computation, was fixed at 1500. Mr. Simp-kins assisted her in making the computation.
In his “Reasons for Judgment,” the trial judge said in part:
“Insofar as Mrs. Constant is concerned, the Court finds the confession was free and voluntarily, and written by her in her own hand. In addition to the confession she executed a promissory note to the order of plaintiff.
“Mrs. Constant’s testimony is contradictory to say the least. The Court finds that the confession corroborated by the note and the testimony of Mr. Fasullo as well as Simpkins is sufficient to sustain a judgment against Mrs. Constant.
:{s ;{: ‡ * * *
“The Court is of the opinion that the evidence being sufficient to support a judgment against Mrs. Constant, the same evidence is admissible as to the surety who is solidarily bound with her.”
The defendant-appellant Columbia Casualty Company made strenuous objection to the admission of the “confession” and the promissory note against it. This is the principal issue argued on appeal.
In its brief filed in this court, the appellant specifies the following errors:
"1. The court blow erred in allowing the confession and the promissory note to be admitted into evidence and in holding that these were admissions against interest which were admissible against the co-defendant surety on the fidelity bond.
2. The court below erred in holding that Mrs. Constant was privy to the contract between Joseph P. Fasullo and Columbia Casualty Company and in holding *364 that the same evidence against Mrs. Constant, principal on the fidelity bond, was admissible against the surety because of this relationship.
3. Alternatively, the court below erred in holding that there was sufficient evidence to prove liability and damages against the surety and on which to sustain a judgment.”
The trial judge expressed concurrence in the general rule that the admissions against interest of one defendant are not binding on his codefendant, except where the admission is a part of the res gestae. However, he held that an exception to the general rule resulted from the contract of surety on the premise that Mrs. Constant was privy with the Columbia Casualty Company and that they were bound in solido. On this theory he held that admissibility is not necessarily limited to res gestae, citing 4 Wigmore, Evidence § 1077 (3d ed. 1940); and Reynes v. Zacharie’s Succession, 10 La. 127 (1836); and (on denial of new trial) 2 Jones, Evidence § 338 (5th ed. 1958).
This was not a joint contract made between Mrs. Constant and Columbia, such as an indemnity bond which might be made by a bank cashier or a public official as a fiduciary. The contract was between Columbia and Fasullo, and only in a collateral sense did it relate to Mrs. Constant and the other employees of the insured. Since there was no contract expressly stipulating a solidary obligation, one cannot be presumed and can exist only by virtue of some provision of law. LSA-C.C. art. 2093. There are several provisions of law creating obligations in solido without express stipulation, such as joint tort-feasors (LSA-C.C. art. 2324) and commercial partners (LSA-C.C. art 2872) ; but we do not know of any provision of law imposing the obligation in solido on Mrs. Constant and the surety.
The obligation of the surety to indemnify the insured is contractual and is controlled by the provisions of the Commercial Blanket Bond which created it. The debt of Mrs. Constant to her employer arises out of her obligation to compensate for money and merchandise stolen from him. They could not have been joined as codefendants in the same suit, except for the provisions of LSA-C.C. art. 3051, which reads as follows :
“The creditor may include in the same suit, both the debtor and the surety. If he obtains judgment against both, the surety who is entitled to the benefit of discussion, may insist that the judgment shall be first executed against the principal debtor.”
We are sure the trial judge’s reference to privity between Mrs. Constant and the surety was not intended to imply an opinion that they were contractually so related, but that, because of their mutuality of interest in admitting a theft which would impose upon each of them an obligation to pay the loss, a declaration against the interest of one was a declaration against the interest of the other. We think that, beyond the admission of theft, their interests were in conflict and the mutuality of relationship at an end. We must then determine to what extent, if any, Mrs. Constant’s declaration against interest was a part of the res gestae, so as to take it out of the rule of inadmissibility against the surety.
Counsel for appellant and appellee both state in their briefs that this question is res nova in Louisiana. However, counsel for appellant cites as a close analogy, Caldwell v. Nelson Morris & Co., 125 La. 301, 51 So. 205 (1910), and counsel for appellee relies strongly on Purity-Reiss Candy Co. v. Maryland Cas. Co., 128 So.2d 677 (La.App. 4th Cir. 1961).
The Caldwell case, cited by appellant, involved a suit against a former employer for damages resulting from reports made concerning the plaintiff employee which seriously impaired the plaintiff’s ability to provide an indemnity bond required by his new employer. lie sought to have admitted an. *365 alleged admission made by an agent of the defendant. Our Supreme Court said:
“It has been held that the declarations of a company’s agent, while acting within the scope of his authority, are evidence as a part of res gestae against it. But, the transaction ended, the agency terminates, and he can no longer speak of it, so as to bind the company. Hill v. Opelousas Co., 11 La.Ann. 292. The admission, to be binding, must be made during and must relate directly to the agency. Reynolds v. Rowley, 3 Rob. 201, 38 Am.Dec. 233; Dykes v. Cockrell, 6 La. Ann. 707; Keane v. Branden, 12 La.Ann. 20. The admission or declaration of his agent binds the principal ‘only when it is made during the continuance of the agency in regard to a transagtion then depending et dum fervet opus.’ It is because it is a verbal act and part of res gestae. Greenleaf on Evidence (16th Ed.) vol. 1, § 184c.” (Emphasis added.) 125 La. at 304-305, 51 So. at 206.
The syllabus by the Court states the holding more succinctly as follows:
“The declarations of a company’s agent are not admissible against it, unless shown to have been made while acting within the scope of his authority, and in a matter relating directly to the agency and then depending. Declarations made by the agent are admissible against the principal only zvhen forming a part of the res gestae.’’ (Emphasis added.) 125 La. at 301-302, 51 So. at 205.
We must agree with counsel for appellant ■that the principal and agent relationship is ■so closely analogous to the relationship of principal and surety in this case that the rationale of the Caldwell case is equally applicable here.
Purity-Reiss, on which appellee places much reliance, does not stand as authority ■for the admissibility of the admission or '“confession” of Mrs. Constant in this case. In Purity-Reiss this court said:
“The questions presented by this appeal are (1) whether the gross profits method utilized by plaintiff in establishing the loss is reasonable, and, (2) whether the loss was sustained by plaintiff over a two-year period. * * * ” 128 So.2d at 678.
In that case there was specific evidence of theft and a quantity of stolen merchandise was found by a police officer in an automobile owned by an employee. The employee was arrested, an investigation ensued, other employees were implicated, and five were arrested. They admitted their guilt; and the fact of their having been engaged in systematic thefts from the employer does not appear to have been an issue, though there was some question as to how long the thefts had been going on. It was in this connection, that is, the period of time over which the thefts extended, that the written confessions were considered. The report of that case does not indicate that any objection was raised to the use of the confessions for this purpose. The issue was not whether or not thefts had in fact been committed, but the method of proof utilized in arriving at the amount of the loss and the time over which it extended.
This court approved the use of the gross profits percentage system in proving the loss and held that the proof offered in that case reasonably had met the requirement of the blanket position bond that the insured should “conclusively prove” the loss. We do not have that question in this case; in fact, it could not be an issue because of the following clause in the bond in question:
“EX'CLUSION
“Section 2. This Bond does not apply to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation ; provided, however, that this paragraph shall not apply to loss of money *366 or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees.”
 The requirement of proof of loss within the foregoing limitations must be satisfied before the surety can be held under the bond. As stated above, the only proof of loss offered in this case is the admission of Mrs. Constant and her promissory note acknowledging her personal debt to plaintiff. The questionable method by which the loss was computed, its speculative character and its probative value need not be considered. Nor is it necessary to determine whether the "confession” or admission against interest by Mrs. Constant and her note are sufficient proof of theft by her to trigger the contingency upon which the liability of the surety depends. We, therefore, pretermit those questions and hold that the declaration of Mrs. Constant as it relates to and attempts to determine the amount of the loss is not admissible against the defendant Columbia Casualty Company. It does not meet the requirement that it be a part of the res ges-tae to take it out of the rule of inadmissibility against the surety.
“Res gestae may broadly be defined as matter incidental to the main fact and explanatory thereof and may include acts and words which are so closely connected therewith as to constitute a part of the transaction; and such acts and words must be spontaneous and so related to the occurrence in question as reasonably to appear to be evoked and prompted thereby. Stated differently, the term ‘res ges-tae’ comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content. Statements which conform to these requirements and which in some way elucidate, qualify, or characterize the act in question are admissible in evidence as a distinct and separate exception to the hearsay rule. * * * Expressed differently, whether a declaration is a part of the res gestae depends upon whether the declaration was the facts talking through the party or the party talking about the facts. * * * ” 20 Am.Jur., Evidence, § 662 (1962).
In the situation presented here, insofar as the amount of her thefts of money and merchandise is concerned, as distinguished from the fact of theft itself, Mrs. Constant’s declarations are not the acts themselves speaking, but her narration about the facts.
“The courts have repeatedly stressed the importance of distinguishing mere narrations from spontaneous declarations. A statement that is merely a narrative of a past occurrence is logically no part of the res gestae and is inadmissible in evidence, notwithstanding it is made soon after the occurrence. When opportunity for formulation of the content of the statement has existed to sufficient extent to prevent the declaration becoming part of the main event [the act of theft], the courts will uniformly reject the statement as hearsay, regardless of the character of the declaration or the event it seeks to explain or characterize. * * * ” 20 Am.Jur., Evidence, § 670 (1962).
“The res gestae rule permits the introduction in evidence of statements of fact rather than of a conclusion of the declarant. Expressions of opinion are not ordinarily admissible as part of the res gestae, even though they are accompanied by acts tending to show that the declarant really entertained the opinion so expressed; * * 31A C.J.S. Evidence § 421 (1964).
*367 Mrs. Constant’s estimate of loss under the prodding of Mr. Simpkins, whose company would get 50% of the amount recovered — Mr. Simpkins himself would get 10% of that amount — is at best a mere opinion. Furthermore, her declaration was not contemporaneous with the thefts which extended back over nearly five years.
“It is essential that the declarations accompany the act they describe or relate to and be made simultaneously with its occurrence or so near thereto as to form a part thereof. Accordingly, the general rule is well settled that a declaration sought to be proved under the res gestae exception to the hearsay rule must have been contemporaneous with the event established as the principal act [here the principal act being the theft]; it must spring from this act simultaneously with its occurrence, without any intervening interval or opportunity for deliberation in forming the statement. This rule is held applicable to all declarations offered .as part of the res gestae, regardless of the nature of the act or event they seek to describe or characterize. * * * ” 20 Am.Jur., Evidence, § 669 (1962).
Counsel for appellant who appeared in this case on the trial level filed a comprehensive trial brief, and the counsel who appeared here on appeal also filed an extensive brief covering all the issues with numerous case citations from other jurisdictions indicating that the great weight of authority supports the conclusions we have reached. We think it is unnecessary to burden this opinion with specific reference to those authorities.
For these reasons the judgment appealed from is reversed insofar as it casts defendant Columbia Casualty Company, and judgment is now rendered in favor of defendant Columbia Casualty Company against plaintiff Joseph P. Fasullo, doing business as Fasullo Drugs and Fasullo Self-Service Drugs, rejecting plaintiff’s demands and .dismissing his suit at his cost.
Reversed; judgment rendered.